**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATRINA SOTO, on behalf of herself and all other persons similarly situated, known and unknown, | ) ) ) | |
| | ) | Case No. 15-cv-10127 |
| Plaintiffs, | ) ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| WINGS 'R US ROMEOVILLE, INC.; WINGS 'R US PLAINFIELD, INC.; WINGS 'R US BOLINGBROOK, INC.; WINGS 'R US, ELMHURST, INC.; and JAMES TETTENHORST, individually, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' partial motion to dismiss [26], Plaintiff's motion for step-one notice [40], the parties' joint motion for entry of an agreed confidentiality order [51], and Plaintiff's motion to toll the statute of limitations [67]. For the following reasons, Defendants' motion to dismiss [26] is denied, Plaintiff's motion for step-one notice [40] is granted, the parties' joint motion for entry of an agreed confidentiality order [51] is granted, and Plaintiff's motion to toll the statute of limitations [67] is denied without prejudice. This case is set for further status on September 15, 2016, at 9:30 a.m.

I.      **Background**

From January 2011 until October 2015, Plaintiff Katrina Soto worked as a server at a Buffalo Wild Wings restaurant in Romeoville, Illinois. She now brings class action and collective action claims on behalf of all similarly situated servers and bartenders at four separate

Buffalo Wild Wings locations (operated by the four Wings 'R Us Defendants), alleging that Defendants violated the Illinois Minimum Wage Law ("IMWL") 820 ILCS 105/1 to 105/15, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, for failing to pay Plaintiff and other similarly situated employees adequate minimum and overtime wages. Regarding the minimum wage claim, Plaintiff alleges that she and other similarly situated employees were paid as "tipped" employees for all hours worked (*i.e.*, they were paid an hourly rate less than the minimum wage, subsidized by customer tips), even though, at times, they performed non-tipped duties outside the scope of their tipped occupation. For example, Plaintiff alleges that in addition to their tipped duties, servers and bartenders regularly performed such non-tipped duties as cleaning bathrooms, dishwashing, general restaurant cleaning, and trash removal. The theory is that Defendants should have paid these employees the full minimum wage for time spent performing these non-tipped duties, as opposed to taking a "tip credit" for that time. Plaintiff estimates that there are more than 200 employees who are similarly situated.

After the parties completed their briefing of Defendants' motion to dismiss, Plaintiff filed an amended complaint [56], adding allegations that Defendants also violated the IMWL and FLSA by failing to pay their employees overtime wages at the correct rate for time worked in excess of forty (40) hours in individual workweeks.

## II.    Motion to Dismiss[1]

### A.    Legal Standard

In reviewing the sufficiency of a complaint, a district court must accept all well-plead facts as true and draw all permissible inferences in favor of the plaintiff. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). The Federal Rules of Civil

---

[1] The Court accepts as true the facts alleged in Plaintiff's complaint and makes all reasonable inferences in her favor. See *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

Procedure require only that a complaint provide the defendant with "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Supreme Court has described this notice-pleading standard as requiring a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While factual allegations must be accepted as true, legal conclusions may not be considered. *Id.*

## B.     Analysis

Defendants have moved to dismiss Plaintiff's claim that they violated the FLSA and IMWL by paying Plaintiff a sub-minimum wage for time spent performing non-tipped duties unrelated to her tipped occupation.[2] According to the FLSA, an employer may pay a tipped employee less than minimum wage (*i.e.*, the employer may take a "tip credit"), but if the tips, in combination with the below-minimum-wage hourly rate, do not add up to the minimum wage, the employer has to make up the difference. 29 U.S.C. § 203(m); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1074 (7th Cir. 2014) ("[I]n effect [the tipped employees'] tips are credited against the minimum wage to which they would otherwise be entitled."). The IMWL also has a tip-credit provision that is substantially similar to the FLSA provision, but requires employers to pay a slightly larger percentage of the minimum wage to tipped employees. 820 ILCS 105/4(c).

---

[2] Plaintiff refers to Defendants' motion to dismiss as a *partial* motion, claiming that Defendants did not seek dismissal of Plaintiff's claim that Defendants failed to inform her and other tipped employees of the provisions of the tip-credit subsection of the FLSA. See 29 U.S.C. § 203(m); see also *Schaefer v. Walker Bros. Enters., Inc.*, 2016 WL 3874171, at *4–5 (7th Cir. July 15, 2016); *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 800–04 (N.D. Ill. 2013). Plaintiff included this "failure to inform" allegation within the body of her complaint, not as a separately enumerated claim. Regardless, Defendants did not address this claim in their motion to dismiss, and thus the Court does not address the claim here. Also absent from Defendants' motion to dismiss is any mention of Plaintiff's claims regarding Defendants' failure to pay overtime wages. Plaintiff raised these claims for the first time in her amended complaint, which she filed after Defendants filed their motion to dismiss.

Employers have wrestled with how to apply this tip credit to tipped employees who also perform non-tipped tasks (referred to as a "dual-jobs" scenario). The question is whether and to what extent an employer can continue to take a tip credit for its employees' time spent performing non-tipped duties. For example, in this case, Plaintiff received her below-minimum-wage hourly rate both when she performed her tipped duties as a server and when she performed non-tipped duties such as cleaning bathrooms, dishwashing, cleaning the restaurant, and taking out the trash. Plaintiff says that she should have been paid the full minimum wage for her time spent performing non-tipped duties. Defendants disagree, claiming that these non-tipped tasks were related to Plaintiff's tipped occupation such that Defendants were not required to pay her differently for her time spent performing those tasks.

The FLSA and IMWL expressly allow employers to take a tip credit against the minimum wage for employees in occupations that customarily receive gratuities:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m).

Every employer of an employee engaged in an occupation in which gratuities have customarily and usually constituted and have been recognized as part of the remuneration for hire purposes is entitled to an allowance for gratuities as part of the hourly wage rate * * *. The Director shall require each employer desiring an allowance for gratuities to provide substantial evidence that the amount claimed, which may not exceed 40% of the applicable minimum wage rate, was received by the employee in the period for which the claim of exemption is made, and no part thereof was returned to the employer.

820 Ill. Comp. Stat. § 105/4(c).

However, both statutes are silent on the dual-jobs distinction. To fill the gap, courts often reference the Department of Labor regulations for guidance on this issue, where the focus is on whether the non-tipped duties are *related* to the tipped occupation:

In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (2012). The Department of Labor refined this "related to" standard in its

*Field Operations Handbook*, stating that employers cannot take a tip credit if the employee

spends more than 20 percent of his or her workday performing these related, non-tipped tasks:

Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20

percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

U.S. Department of Labor, *Field Operations Handbook* § 30d00(e) (June 30, 2000).[3]

The Seventh Circuit addressed the dual-jobs standard in two recent opinions. First, in *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014), the court considered the propriety of the district court's denial of class certification to a putative class raising a dual-jobs claim very similar to Plaintiff's claim. Although the merits of that opinion are not directly relevant here, the court indirectly cast its imprimatur on the Department of Labor's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20-percent standard in § 30d00(e). *Id.* at 1076. The court also listed—albeit in dicta—certain tasks that it considered *unrelated* to the tipped duties of restaurant servers, and thus tasks for which servers must be paid the full minimum wage: "But of course if the tipped employees also perform non-tipped duties (provided those duties are unrelated to their tipped duties—an important qualification, as we'll see), such as, in the case of restaurant servers, *washing dishes, preparing food, mopping the floor, or cleaning bathrooms*, they are entitled to the full minimum wage for the time they spend at that work."[4] *Id.* at 1075

---

[3] Defendants provided the Court with a detailed history of the various Department of Labor opinion letters speaking to this dual-jobs scenario, including a 2009 opinion letter rejecting the 20-percent rule discussed in the Field Operations Handbook. However, the Department issued the 2009 opinion letter on the eve of a change in administration, and subsequently withdrew the letter several weeks later. Thus, courts continue to rely upon the 20-percent standard articulated in the Field Operations Handbook. See, *e.g.*, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (concluding that the Filed Operations Handbook was entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997)).

[4] Defendants criticize the list of "unrelated" tasks articulated in *Driver* as inconsistent with § 531.56(e), which says that a waitress *can* prepare food ("toasting bread, making coffee") and *can* "occasionally wash[] dishes or glasses" within the scope of his or her tipped occupation. But *Driver* paints with broad strokes, describing categories of restaurant duties (*i.e.*, chef duties and janitorial duties) that generally are assigned to other non-tipped employees (*i.e.*, chefs and janitors). The Department of Labor's regulation adds nuance to these broad categories. For example, while chefs generally are responsible for cooking food, a server might supplement those efforts within the scope of his or her occupation with simple, ancillary food-prep tasks ("toasting bread, making coffee"). And while a restaurant's janitorial staff might

(emphasis added); see also *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1032 (N.D. Ill. 2012) (tasks of "washing windows; cleaning chandeliers; picking up trash in the parking lot; taking out garbage; restocking bathrooms; and dumping and refilling the 'sani' bucket" were unrelated to the plaintiffs' tipped occupations). The court only cited one dual-jobs case, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011), where the Eighth Circuit concluded—relying on § 531.56(e) and the Field Operations Handbook[5]—that although the employees' non-tipped tasks were sufficiently related to their tipped occupations, the non-tipped tasks comprised more than 20 percent of the employees' work load, and thus needed to be compensated at the full minimum wage.

More recently, in *Schaefer v. Walker Bros. Enters., Inc.*, —— F.3d ——, 2016 WL 3874171 (7th Cir. July 15, 2016), the Seventh Circuit addressed the dual-jobs question directly, concluding that the servers' non-tipped duties (*e.g.*, making coffee, cleaning tables, * * * ensuring that hot cocoa is ready to serve and strawberries are spread on the waffles, etc.) were sufficiently related to their tipped occupation such that their employer was entitled to take the tip credit for their time spent performing that work. *Id.* at *2. The court struggled in deciding whether certain un-tipped tasks (*i.e.*, wiping down burners and woodwork and dusting picture frames) were related to the tipped occupation, but avoided the question by concluding that the workers' time spent on those tasks was negligible. *Id.* at *3. The court anchored its analysis in the Department of Labor's dual-jobs regulation and Department's Field Operations Handbook § 30d00(e), although the parties did not contest the applicability of those provisions. *Id.* And

---

handle the bulk of the cleaning, a server might be responsible for light cleaning tasks related to his or her service duties ("cleaning and setting tables" or "occasionally washing dishes or glasses"). Read in this light, *Driver* and § 531.56(e) are not inconsistent.

[5] The Eighth Circuit acknowledged the parties' agreement that the Department of Labor's regulation was entitled to *Chevron* deference, and concluded that the Departments' Field Operations Handbook was entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997).

again, the only case that the court relied upon regarding its substantive application of the dual-jobs standard was the Eighth Circuit's *Fast* opinion.

Despite the high level of nuance discussed in these sources (*i.e.*, what types of tasks are and are not related to the occupation of restaurant server), at the motion to dismiss stage, the Court's only concern is whether Plaintiff has stated a plausible claim for relief. Here, Plaintiff alleges that she and others similarly situated "regularly" performed tasks unrelated to their tipped professions, but they were not paid the minimum wage for their time spent performing those tasks. Plaintiff lists non-tipped tasks that are mostly janitorial in nature, including cleaning bathrooms, dishwashing, general restaurant cleaning, and trash removal. *Driver* addressed this issue at the broadest level, noting that janitorial tasks such as "washing dishes, preparing food, mopping the floor, or cleaning bathrooms" are categorically unrelated to the duties of a restaurant server. *Driver*, 739 F.3d at 1075. *Schaefer* adds some nuance to this statement, holding that "cleaning tables" *is* a janitorial duty related to a server occupation, but "wiping down burners and woodwork and dusting picture frames" arguably are not. *Schaefer*, 2016 WL 3874171, at *2. And according to the Department of Labor, certain janitorial tasks—such as "cleaning and setting tables" and "occasionally washing dishes or glasses"—can be related to the occupation of a restaurant server. 29 C.F.R. § 531.56(e).

In short, there is no controlling authority stating that, as a matter of law, cleaning bathrooms, dishwashing, general restaurant cleaning, and trash removal are non-tipped duties related to the occupation of a restaurant server. While, with the help of discovery, Defendants might succeed in proving that some or all of the alleged tasks actually were related to Plaintiff's tipped occupation or were otherwise negligible in comparison to Plaintiff's tipped duties, Defendants' arguments are insufficient to allow the Court to reach that conclusion at the motion

to dismiss stage. Accordingly, the Court concludes that Plaintiff has stated a colorable dual-jobs claim under the FLSA.

The Court reaches the same conclusion as to Plaintiff's dual-jobs claim under the IMWL. As explained, the IMWL, like the FLSA, does not discuss the dual-jobs scenario. The Illinois Administrative Code gives the Director of the Illinois Department of Labor discretion to refer to the federal regulations when interpreting the IMWL and its implementing regulations, provided that if there are overlapping provisions, the stricter provision prevails. Ill. Admin. Code § 210.120. Here, there are no overlapping or otherwise conflicting provisions. Nonetheless, Defendants highlight that the Illinois Administrative Code makes it *permissive*, not mandatory, to refer to federal regulations when interpreting the IMWL. Defendants argue that the Court should decline to import the federal regulation here because the Illinois Department of Labor has amended the IMWL's regulations multiple times since the dual-jobs regulation went into effect but did not adopt the Department of Labor's dual-jobs theory. [37, at 18.] The Court is not persuaded that the Illinois Department of Labor's passivity should be interpreted as its rejection of the federal regulation.

Defendants also argue that the federal dual-jobs regulation contradicts the plain language of the IMWL. The IMWL authorizes the use of a tip credit for any employee engaged in an "occupation" in which tipping is customary, 820 ILCS 104/5(c), and defines "occupation" to "mean[] an industry, trade, business or class of work in which employees are gainfully employed." 820 ILCS 105/3(e). Defendants argue that the IMWL's broad definition of "occupation"—a term that is not defined in the FLSA—precludes the importation of the federal dual-job distinction into the statute. The Court disagrees. It seems perfectly reasonable to define "restaurant service work" as one "class of work" for which an employer may take a tip credit,

and "restaurant janitorial work" as a separate "class of work" for which an employer may not take a tip credit. This delineation tracks the plain language of the IMWL and imports the dual-jobs distinction in the federal regulation. Defendants' claim that this reading of the statute "violate[s] a fundamental canon of statutory construction" is unavailing.

In sum, the Court sees no reason why the Department of Labor regulation would not inform the Court's analysis equally in regard to the IMWL claim. Other courts in this district have reached the same conclusion. See, *e.g.*, *Schaefer v. Walker Bros. Enters., Inc.*, 2014 WL 7375565, at *2 (N.D. Ill. Dec. 17, 2014) ("The IMWL mirrors the federal statute, and the same analysis is generally applied to both statutes." (citing *Driver*, 890 F. Supp. 2d at 1011)). Accordingly, Defendants' motion to dismiss the IMWL claim also must be denied.

## III.     Step-One Notice

### A.     Legal Standard

Also before the Court is Plaintiff's motion for step-one notice of its FLSA collective action pursuant to 29 U.S.C. § 216(b). "A collective action under § 216(b) differs from a class action under Federal Rule of Civil Procedure 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under § 216(b) only if they opt in to the action by providing their written consent." *Franks v. MKM Oil, Inc.*, 2012 WL 3903782, at *9 (N.D. Ill. Sept. 7, 2012) (citing *Erin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011)). The majority of courts in this circuit "have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action.'" See *Franks*, 2012 WL 3903782, at *9 (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845 (N.D. Ill. 2008)); see also *Medina v. Happy's Pizza Franchise, LLC*, 2012 WL 1094353, at *2 (N.D. Ill. Apr. 2, 2012). "Step one involves a conditional certification, and step two, a final certification. Plaintiffs' burden

increases with each, directly proportional to discovery progress." *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *1 (N.D. Ill. Mar. 16, 2016); *Blakes v. Ill. Bell Telephone Co.*, 2013 WL 6662831, at *4 (N.D. Ill. Dec. 17, 2013) ("District courts typically follow a two-step process * * * involving conditional certification of a class pre-discovery followed by a second look at whether collective treatment is appropriate after the parties have engaged in discovery."). As one court in this district recently explained:

> The certification of an FLSA collective action typically proceeds in two stages. The first stage * * * involves conditionally certifying a class for notice purposes. There is a low standard of proof. The court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant. The lenient interpretation standard, however, has sometimes been supplanted by a more rigorous examination standard if there has been more extensive discovery allowed the plaintiff. The second stage in a collective proceeding comes after any opt-ins have appeared and discovery has been finished. Then the defendant is given an opportunity to move for decertification. At that stage, if requested to do so, the court makes a more rigorous examination of the facts relating to whether or not the case may appropriately continue as a collective action.

*Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013) (internal citations omitted).

This case is at the step-one "conditional certification" phase. "The purpose of conditional certification is to determine the size and contour of the group of employees who may become collective members and whether these potential members are 'similarly situated.'" *Briggs*, 2016 WL 1043429, at *2 (citing 7B Charles A. Wright et al., *Federal Practice & Procedure* § 1807; *Gomez v. PNC Bank, Nat'l. Assoc.*, 306 F.R.D. 156, 173 (N.D. Ill. 2014) ("The first step focuses on determining whether 'similarly situated' plaintiffs do in fact exist such that a notice can be sent to them" (internal quotation marks and alterations omitted))). Courts undertake this step-one analysis "to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective

action." *Ervin*, 632 F.3d at 974. Because of the preliminary nature of the step-one analysis, a plaintiff need only make a "minimal showing" that the potential class are similarly situated. *Creal v. Grp. O, Inc.*, 155 F. Supp. 3d 831, 837 (N.D. Ill. 2016) (citation omitted); see also *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 718 (N.D. Ill. 2012).

Because, at the time of filing, the parties had yet to engage in any discovery,[6] Plaintiff need only make a "'modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Id.* (citation omitted); see also *Steger v. Life Time Fitness, Inc.*, 2016 WL 245899, at *2 (N.D. Ill. Jan. 21, 2016) (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)); *Medina*, 2012 WL 1094353, at *2. "Affidavits, declarations, other documents, or deposition testimony can support this 'modest factual showing.'" *Briggs*, 2016 WL 1043429, at *2 (citing *Calverley v. Careerbuilder, LLC*, 2015 WL 4450045, at *1 (N.D. Ill. July 20, 2015)). Putative collective action members need not be *identically* situated, only similarly situated. *Id.* (citing *Russell v. Illinois Bell Tel. Co., Inc.*, 721 F. Supp. 2d 804, 812).

That being said, "conditional certification is not automatic." *Briggs*, 2016 WL 1043429, at *2. To proceed as a collective action, a plaintiff must "'demonstrate[] similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the [FLSA] generally must be present.'" *Id.* (citation omitted); see also *Boltinghouse v. Abbott Labs., Inc.*, 2016 WL 3940096, at *2 (N.D. Ill. July 20, 2016). Ultimately, if step one's "low burden is met, notice may be issued to prospective plaintiffs who may opt into the action, with discovery to follow." *Creal*, 2016 WL 98566, at *4.

_____

[6] At the time Plaintiff filed her reply brief, Plaintiff had served written discovery requests on Defendants, but those requests had not been answered and no depositions had taken place. [See 47, at 9 n.9.]

Again, at this initial stage, "[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman*, 949 F. Supp. 2d at 855–56 (citation omitted); see also *Briggs*, 2016 WL 1043429, at *2; *Larsen v. Clearchoice Mobility, Inc.*, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011) ("[T]he court does not resolve factual disputes or decide substantive issues going to the merits."); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011) ("[T]he court does not consider the merits of a plaintiff's claims, or witness credibility"). Indeed, "[a] district court has wide discretion to manage collective actions." *Alvarez*, 605 F.3d at 449.

**B.     Relevant Facts**

Plaintiff has provided declarations from six individuals to support two alleged FLSA violations: (1) that Defendants failed to pay servers and bartenders the minimum wage for time spent performing non-tipped duties unrelated to their tipped occupations (the "dual-jobs claim"), and (2) that Defendants failed to provide notice to its tipped employees of the FLSA's tip-credit provisions (the "notice claim").

As to Plaintiff's dual-jobs claim, Plaintiff provided evidence showing that Defendants take a tip credit for all hours worked by their servers and bartenders, even though those individuals spend 25 to 40 percent of their time performing non-tipped work. Plaintiff divided the types of non-tipped work that Defendants' servers and bartenders perform into five categories: (1) opening duties, (2) shift change duties, (3) closing duties, (4) intensive cleaning duties that occur during varying times, and (5) "side-work" duties performed during the course of a shift in between serving customers. [See 42, at 3–4.] Plaintiff then provided examples of the specific non-tipped duties performed within each of these five categories, separating the duties performed by servers and by bartenders where appropriate. [42, at 11–15.]

As to Plaintiff's notice claim, Plaintiff alleges that Defendants do not inform servers and bartenders of the amount of tips Defendants will claim against their minimum wages; that Defendants cannot claim more tips against servers and bartenders' minimum wages than they actually receive; that Defendants cannot take a tip credit against the minimum wage unless it informs its servers and bartenders of the tip credit subsection of the FLSA; and that in order to take the tip credit, Defendants' servers and bartenders have to retain all of their tips, except for valid tip pooling among tipped employees. In support of these allegations, Plaintiff relies on the declarations of five individuals: server Sean Bagley [42-1, at 7 (no recollection of being informed about FLSA tip-credit requirements)], server/bartender Amy Bordewyk [42-1, at 13–14 (same)], server/bartender Dustin Kolodziej [42-1, at 4–5 (same)], server Sarah Murray [42-1, at 25 (same)], and server Beric Wessely [42-1, at 5–6 (same)].

Defendants claim that they hang a Department of Labor poster in each of their restaurants stating the following:

> Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must be met.

[46, at 21–22 (citing *Davis v. B&S, Inc.*, 38 F. Supp. 2d 707, 719 (N.D. Ind. 1998).] Defendants also provided a signed document from server (and declarant) Sarah Murray's personnel file purportedly showing that Wings 'R Us provided Ms. Murray with certain information about the FLSA tip-credit laws and that she read and understood that information. [See 49, at 3.]

Plaintiff says that these FLSA violations occurred consistently across Defendants' four franchise locations. Plaintiff supports this allegation by noting that, for continuity purposes, the managers of all four franchise stores are trained at the same location, such that managers are capable of transferring between restaurants to fill temporary vacancies or to cover shifts. [42, at

16.] Plaintiff further alleges that the four franchise stores share employees and kitchen staff, further establishing the consistency of practices between the stores. Plaintiff says that the training that servers and bartenders receive is the same regardless of the store where they work, and that at least one server has worked at multiple restaurant locations at the same time. [42, at 17.]

## C. Analysis

Defendants argue that Plaintiff failed to demonstrate that she and absent class members were victims of a common policy that violates the law.[7] The Court disagrees. As to Plaintiff's dual-jobs claim, the alleged "common policy that violates the law" is Defendants' practice of having its servers and bartenders spend 25 to 40 percent of their time performing non-tipped duties unrelated to their tipped occupations without receiving the minimum wage for that work. To the extent that Defendants argue that this practice does not violate the law, the Court already has explained in detail (in the Court's analysis regarding Defendants' motion to dismiss) how these alleged practices might run afoul of the FLSA's dual-jobs regulation. See *Schaefer*, 2016 WL 3874171, at *2. And to the extent that Defendants argue that Plaintiff failed to identify a "common policy," the declarations of the six server/bartenders evince a consistent practice in all four franchise locations where servers and bartenders regularly perform non-tipped duties. The exact percentage of time that these individuals spend on non-tipped duties and the degree to which these non-tipped duties are related to the employees' tipped occupation are questions for another day. For now, Plaintiff has identified a common policy that violates the law.

As to Plaintiff's notice claim, Defendants argue that "Plaintiff offers **zero** affirmative evidence that Defendant did not provide appropriate notice to its employees of the tip credit

---

[7] Defendants argued that Plaintiff's preliminary certification should be denied because Plaintiff failed to name and serve three of the four franchise stores. [46, at 24.] In Plaintiff's original complaint [1], Plaintiff listed Wings 'R Us Romeoville, Inc. as the only named Defendant, along with Doe Defendants 1–20. Plaintiff has since amended her complaint [56], adding the names of the remaining three franchise stores. Thus, Defendants' argument is now moot.

provision, much less a 'modest factual showing' sufficient to demonstrate that Defendant had a common policy or plan not to provide notice to tipped employees of the FLSA tip credit provision." [46, at 27.] Again, the Court disagrees. Plaintiff's "modest factual showing" comes from the declarations of the six servers and bartenders who *all* claim that they have no recollection of Defendants notifying them about the FLSA tip-credit provision. Defendants say that they *did* provide notice, through posters and (at least in the case of server Sarah Murray) through information sheets that the employees had to read and sign. This evidence, if true, could pose a problem for the ultimate success of Plaintiff's notice claim.[8] However, at the preliminary certification stage, the Court does not "specifically consider opposing evidence presented by a defendant." *Bergman*, 949 F. Supp. 2d at 855–56. The Court's only concern at this stage is whether Plaintiff has made a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law. And although Defendants have presented a modest factual showing of their own attempting to establish that they *did not* violate the law, that is insufficient to displace the testimony of the six declarants who say otherwise.

Defendants also argue that any determination of liability in this case would have to be done on an individualized basis because there are no records tracking the amount of time employees spend on non-tipped work, such that "determining whether each class member performed certain duties, when, and for how long will necessarily require examining each employee's individual situation through oral testimony." [46, at 31.] This argument relates to the "similarly situated" requirement of preliminary certification, where Plaintiff must show "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of

---

[8] Plaintiff says that if discovery reveals that Defendants did hang Department of Labor posters in its restaurants, Plaintiff will argue that such posters do not satisfy an employer's obligation to inform employees of the tip-credit provisions of the FLSA. [See 47, at 8 n.8.]

the [FLSA]." *Briggs*, 2016 WL 1043429, at *2. Plaintiff says that despite the individual differences between employees, the factual nexus binding these plaintiffs is the fact that they all spent more than 20 percent of their time performing unrelated, non-tipped work. Plaintiff refutes Defendants' claim that any liability determinations will have to be made on an individualized basis by noting that the Court can determine as a matter of law whether certain non-tipped duties performed by servers and bartenders are unrelated to their tipped professions. See *Schaefer*, 2016 WL 3874171, at *2. Plaintiff further argues that while Defendants may not have records tracking the amount of time their employees spent on these allegedly unrelated non-tipped tasks (records that Plaintiff says Defendants were required to keep), that evidentiary gap can be filled with evidence from a representative sample of employees. See *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016). Thus, there is no reason to think that Plaintiff will be categorically foreclosed from establishing that servers and bartenders spent more than 20 percent of their time performing non-tipped duties unrelated to their tipped occupation simply because Defendants did not track and record this information as a part of its regular time-keeping practices. At this preliminary stage, the Court is persuaded that Plaintiff and her putative collective action plaintiffs are similarly situated. Defendants are free to raise this argument, and any other arguments, during step-two certification.

Accordingly, Plaintiff's motion for step-one notice [40] is granted. Without endorsing the merits of Plaintiff's claims, the Court concludes that step-one notice is appropriate, as are Plaintiff's proposed notice and consent forms, Plaintiff's proposed methods of delivery (*i.e.*, regular mail and email), and Plaintiff's request to send a reminder email to all potential opt-in plaintiffs halfway through the 60-day notice period. Within 15 days of this order, Defendants shall provide Plaintiff's counsel with an excel spreadsheet listing the information requested in

Plaintiff's motion [see 42, at 27]. However, the Court agrees with Defendants that the notice should make reference to the opt-ins potential discovery obligations (*e.g.*, "If you join this lawsuit, there is a possibility that you will have to answer written questions, sit for a deposition, or testify at trial."). See *Fields v. Bancsource, Inc.*, 2015 WL 3654395, at *5 (N.D. Ill. June 10, 2015) ("Because the current notice fails to even hint that opt-ins will be taking on an obligation in addition to a potential monetary award, it does not allow them to make a fully informed decision regarding whether to join this suit."). The Court rejects Defendants' remaining objections. [See 46, at 36–38.]

The parties should meet and confer to discuss amending the notice to include language regarding the potential discovery obligations of opt-in plaintiffs. If the parties are unable to reach an agreement, they should be prepared to discuss any points of disagreement at the next status hearing and present their proposed submissions to the Court in a joint filing shortly thereafter. In addition, the Court notes that Plaintiff filed her motion for step-one notice prior to filing her first amended complaint, in which she added a § 216(b) collective action claim regarding unpaid overtime wages. [56, at 14–15.] If Plaintiff wishes to include information regarding this alleged failure to pay overtime wages in her notice of lawsuit to potential opt-in plaintiffs, she should present that request to the Court as soon as possible. The Court also encourages the parties to attempt to resolve this issue without the need for further Court intervention.

IV.    **Statute of Limitations**

Also before the Court is Plaintiff's motion to toll the statute of limitations applicable to FLSA claims for potential collective action members. The FLSA requires that an action "be

commenced within two years after the cause of action accrued,"[9] unless the violation was willful, in which case the statute of limitations is three years. 29 U.S.C. § 255(a). An FLSA lawsuit is "commenced":

> on the date when the complaint is filed; except that in the case of a collective or class action * * * it shall be considered to be commenced in the case of any individual claimant – (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) *if such written consent was not so filed or if his name did not so appear – on the subsequent date on which such written consent is filed in the court in which the action was commenced.*

29 U.S.C. § 256 (emphasis added). Thus, even though Plaintiff brought this collective action on behalf of all others similarly situated, the statute of limitations for these putative class members will continue to run until those individuals opt in (*i.e.*, give their consent in writing to become parties in this action, per 29 U.S.C. § 216(b)). See *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013) (comparing requirement that FLSA collective action plaintiffs must opt in to action with procedure of opting out of class actions governed by Fed. R. Civ. P. 23).

Here, Plaintiff filed her complaint on November 6, 2015 [1], and amended her complaint (primarily to identify the Doe Defendants) on May 10, 2016 [56]. Plaintiff filed her motion for step-one notice on March 2, 2016 [40], and that motion was fully briefed as of April 4, 2016 [47]. Plaintiff now requests equitable tolling of the statute of limitations applicable to potential opt-in plaintiffs from March 2, 2016 (*i.e.*, the date Plaintiff filed her motion for step-one notice) until 21 days after this Court issues its ruling on Plaintiff's motion requesting equitable tolling. If granted, the equitable tolling would cover approximately seven months (March to October).

---

[9] An FLSA claim accrues at the time the employee is paid less than what is required under the FLSA—usually payday. See *Sylvester v. Wintrust Fin. Corp.*, 2014 WL 10416989, at *3 n.7 (N.D. Ill. Sept. 26, 2014).

"As a general matter, limitations statutes setting deadlines for bringing suit in federal court are not jurisdictional." *Miller v. FDIC*, 738 F.3d 836, 843 (7th Cir. 2013) (citing *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 485 (7th Cir. 2012) ("[S]tatutes of limitations ordinarily are affirmative defenses rather than jurisdictional bars.")). "Whether a limitations period has the status of a jurisdictional prerequisite or a claim-processing rule determines whether it is subject to waiver, estoppel, or equitable-tolling doctrines." *Id.* at 843–44. Here, there is no clear indication from the FLSA that the statute of limitations is jurisdictional. Accordingly, courts regularly consider the issue of equitable tolling in FLSA cases. See, *e.g.*, *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860–61 (N.D. Ill. 2013) (citing cases).

"[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Knauf Insulation, Inc. v. Southern Brands, Inc.*, 820 F.3d 904, 908 (7th Cir. 2016) (quoting *Menominee Indian Tribe of Wisconsin v. United States*, ––– U.S. –––, 136 S. Ct. 750, 755 (2016)). The Supreme Court has "expressly characterized equitable tolling's two components as 'elements,' not merely factors of indeterminate or commensurable weight," and has "treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other." *Menominee*, 136 S. Ct. at 756 (citing *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007)).

As to the prejudice prong, at least one court has held that "[t]he long delay in issuing a ruling is an extraordinary circumstance that should not cause the opt-ins to lose out on the potential benefits of this lawsuit." *Bergman*, 949 F. Supp. 2d at 860–61 (granting a motion for

equitable tolling in an FLSA case, citing similar cases). Other courts have disagreed: "that a court may take months to rule on a fully briefed motion is (unfortunately) not extraordinary; it is, rather, the predictable and common consequence of crowded court dockets generally and the particular circumstances of any particular judge's docket specifically." *Sylvester v. Wintrust Financial Corp.*, 2014 WL 10416989, at *2 (N.D. Ill. Sept. 26, 2014); see also *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 363 (W.D. Wis. 2014) (collecting cases granting and denying equitable tolling based on the delay necessary to rule on conditional certification motions). Indeed, "clearly *some* period of time must be considered normal, rather than extraordinary, for a court to address a conditional certification motion." *Sylvester*, 2014 WL 10416989, at *2. Here, Plaintiff's request clearly is overbroad, as she seeks equitable tolling from the date she *filed* her motion for step-one notice until 21 days *after* the Court's ruling on that motion. Even if the delay in this case has been unusually lengthy to some degree, Plaintiff's request goes well beyond capturing that unreasonableness. "To hold otherwise would be to opine that equitable tolling should be granted in every § 216(b) case as a matter of course during the pendency of a conditional class certification request, thereby transforming this extraordinary remedy into a routine, automatic one." *Id.* (citation omitted).

The Court is not convinced that there has been an "extraordinary" delay in ruling on Plaintiff's motion for step-one notice. Plaintiff filed that motion on March 2, 2016, and the motion was fully briefed as of April 4, 2016. Based on the date of this order, Plaintiff had to wait approximately six months for briefing and a ruling on her motion for step-one notice. As the *Sylvester* court said, waiting months for a ruling on a fully briefed motion is a "predictable and common consequence" of modern jurisprudence. See *Sylvester*, 2014 WL 10416989, at *2. In this instance, while the wait is largely attributable to the particular circumstances of this Court's

docket, the specific circumstances of this matter also have contributed to the length of the advisement period. All said, the Court is not persuaded that the delay in this instance has risen to the "extraordinary circumstance" level that would warrant equitable tolling.

As to the diligence prong, certainly *Plaintiff* has been diligent in pursuing this collective action. However, the question is whether the *putative class members* have been diligent. Because putative class members are not yet before the court in equitable tolling motions such as this (*i.e.*, they have not yet opted in), some courts have held that any ruling on the diligence of these absent class members would in essence be an advisory opinion. See *Miller-Basinger v. Magnolia Health Systems, Inc.*, 2016 WL 773191, at *2 (S.D. Ind. Feb. 22, 2016) (citing *United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986)). These cases also note that "diligent" non-parties to a collective action are free to opt-in to the collective action prior to conditional certification, and because non-parties to a collective action are not subject to claim preclusion, "diligent" non-parties also have the option to file their own lawsuits should they so choose. See *Sylvester*, 2014 WL 10416989, at *3 ("No ruling by this Court was necessary to permit the filing of another law suit or an opt-in notice in this suit; nothing prevented any former employee of the defendants from either filing their own law suit or filing an opt-in notice for this law suit before a ruling on the conditional certification motion was issued.").

At least one court has criticized this position, arguing that it "ignores the realities of FLSA claims," and "would go against ever applying equitable tolling to a potential opt-in." *Bergman*, 949 F. Supp. 2d at 861. To the former, although the *Bergman* court does not explain what the "realities of FLSA claims" are, assumedly the court is referring to the fact that potential class members often are unaware of the purported wage violation until they receive notice of the collective action (although at least 10 individuals already have opted in here), meaning that each

day the class notification is delayed the potential group of opt-in plaintiffs diminishes. While this is a legitimate concern, it is a reality borne out of the plain language of the statute. See *Sylvester*, 2014 WL 10416989, at *3 ("Congress plainly did not view the filing of a putative collective action to be an adequate reason to stop the clock on claims of other putative members of the collective, instead providing expressly that their cases 'shall be considered to be commenced' on the date on which their own 'written consent is filed.'" (citing 29 U.S.C. § 256(b)). Manipulating (or ignoring) the Supreme Court's equitable tolling standard is not the appropriate means of addressing the practical implications of the statutory limitations period and commencement provision set by Congress. *Id.* ("Issuing a blanket order tolling the limitations period for all putative members of a collective until such time as they have been given notice of the collective action would effectively overturn Congress's view that the statute should run as to such individuals until they have filed an opt-in consent."). To the latter, while the Court's application of the Supreme Court's equitable tolling standard might "go against ever applying equitable tolling to a *potential* opt-in," *Bergman*, 949 F. Supp. 2d at 861 (emphasis added), it does not preclude applying equitable tolling to *actual* opt-in plaintiffs, provided they can satisfy the Supreme Court's standard.

Accordingly, Plaintiff's motion to equitably toll the statute of limitations for absent class members is denied. This denial is without prejudice, however, to the claim of any individual plaintiff who may seek to invoke equitable tolling based on his or her own particular circumstances.

## V. Confidentiality Order

On April 13, 2016, Plaintiff and Defendant Wings 'R Us Romeoville, Inc.[10] filed a joint motion for entry of agreed confidentiality order [51]. The parties agreed on the majority of the provisions in that order, but disagreed as to the provision governing the confidentiality of deposition testimony (paragraph 4 of the proposed order). The parties provided their own proposals for that paragraph. [51-1, at 3–4.] The Court has now reviewed the parties' submissions, and concludes that a revised version of Plaintiff's proposal shall govern. Plaintiff's proposal says, among other things, that the parties must indicate on the record at the time a deposition is taken whether they wish to designate the deposition as "Confidential," and that "[s]uch designation shall be specific as to the portions that contain Confidential Information." The Court has omitted the requirement that confidentiality designations must be specific at the time of the deposition. A party may designate the entirety of a deposition transcript as confidential at the time of the deposition. It is not until 14 days after the delivery of the transcript that the designating party must serve a notice of designation identifying the specific portions of the transcript that are designated confidential.

The parties' motion for entry of agreed confidentiality order [51] is granted, subject to the Court's edit. The Court will enter the confidentiality order on the Court's docket following the entry of this order.

## VI. Conclusion

For the foregoing reasons, Defendants' partial motion to dismiss [26] is denied, Plaintiff's motion for step-one notice [40] is granted, the parties' joint motion for entry of an agreed confidentiality order [51] is granted, and Plaintiff's motion to toll the statute of

---

[10] At the time of filing, Plaintiff had not yet amended her complaint to add the names of the Doe Defendants, and thus Defendant Wings 'R Us Romeoville, Inc. was the only named Defendant at that time.

limitations [67] is denied without prejudice. This case is set for further status on September 15, 2016, at 9:30 a.m.

Date: September 8, 2016

_____
Robert M. Dow, Jr.
United States District Judge